[Cite as *Reese v. Smith*, 2026-Ohio-3011.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| ALBERT REESE | C.A. No.    31594 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| REGINA SMITH | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | CASE No.    DR-2015-10-2998 |

DECISION AND JOURNAL ENTRY

Dated: August 5, 2026

FLAGG LANZINGER, Presiding Judge.

{¶1}    Plaintiff-Appellant, Albert Reese ("Father"), appeals the judgment of the Summit County Court of Common Pleas Domestic Relations Division overruling his objections and adopting the magistrate's decision that modified his parenting time.  We affirm in part, reverse in part, and remand.

I.

{¶2}    Father and Defendant-Appellee Regina Smith ("Mother") are the biological parents of one minor child born in 2009 ("the Child").  Mother and Father were never married.  Father filed a complaint to establish a parent-child relationship in 2015.  In January 2017, the trial court filed a judgment entry allocating parental rights and responsibilities.  The parties engaged in litigation continuously after the trial court's initial allocation of parental rights and responsibilities until late 2021.

{¶3} Relevant to this appeal, Father filed a motion to modify the terms of the parties' parenting plan on March 8, 2023. At the time, the parenting plan designated Mother the residential parent and legal custodian of the Child and provided for a schedule for parenting time with both parties. Father's motion asserted it was in the Child's best interest to modify the existing parenting time order to include specific times for parenting time exchanges and transportation of the Child when the Child's school was not in session.

{¶4} On March 15, 2023, Mother also filed a motion to modify the parties' parenting time schedule. However, Mother's motion expressly requested the trial court terminate Father's parenting time. Mother asserted the modification was necessary on the basis that (1) Father's behavior and conduct toward the Child constituted emotional, psychological, and verbal abuse, which caused the Child tremendous stress, (2) the Child wished to terminate Father's parenting time, (3) Father continued to involve the Child in parental disputes, which was impacting the Child's mental and emotional health, (4) Father continued to demean and degrade the Child about the Child's choice in hairstyles, (5) Father continued to call the Child demeaning and degrading names, and (6) Father had missed parenting time due to a change of his work hours.

{¶5} The magistrate appointed a guardian ad litem ("GAL") for the Child to make recommendations to the trial court regarding the Child's best interest. At the hearing on the parties' motions, the magistrate heard testimony from the GAL, Father, and Mother. The magistrate admitted several exhibits, including the GAL's report. Following the hearing, the magistrate interviewed the Child in camera. A transcript of the in-camera interview was not made a part of the record.

{¶6} On February 5, 2024, the magistrate issued a magistrate's decision wherein the magistrate concluded it was in the Child's best interest to modify Father's parenting time and

ordered a tiered reunification plan. The trial court adopted the magistrate's decision and entered judgment that same day. Father filed timely objections and supplemented his objections after the court reporter filed the hearing transcript. Mother opposed Father's objections, and the trial court overruled Father's objections.

{¶7} Father appeals, raising two assignments of error.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT'S ORDER IN REGARD TO PARENTING TIME IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]**

{¶8} In his first assignment of error, Father contends the trial court order modifying his parenting time is against the manifest weight of the evidence. Father asserts that "[t]he evidence and testimony do not support such a restrictive parenting plan." We disagree.

{¶9} "This Court generally reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion. In so doing, we consider the trial court's action with reference to the nature of the underlying matter." (Internal quotations and citations omitted.) *Herron v. Herron*, 2021-Ohio-2223, ¶ 8 (9th Dist.). "Trial courts are generally afforded broad discretion in determining whether a modification of parenting rights and responsibilities is necessary." *Id.*, quoting *Bohannon v. Bohannon*, 2020-Ohio-1255, ¶ 26 (9th Dist.). An abuse of discretion indicates that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶10} A motion to modify parenting time is governed by R.C. 3109.051. "'When a trial court determines parenting time under R.C. 3109.051, it must do so consistent with the best

interests of the children involved with consideration of the factors mentioned in R.C. 3109.051(D).'" *I.R. v. D.R.*, 2023-Ohio-1427, ¶ 31 (9th Dist.), quoting *Pirkel v. Pirkel*, 2014-Ohio-4327, ¶ 9 (9th Dist.). Pursuant to R.C. 3109.051(D), a trial court is required to consider, (1) the prior interaction and interrelationships of the children with their parents, siblings, and other family members; (2) the geographical location of each parent; (3) each parent's and child's schedule; (4) the age of the child; (5) the child's adjustment to home, school, and community; (6) if the court has interviewed the child in chambers, the wishes and concerns of the child; (7) the health and safety of the child; (8) the amount of time available for the child to spend with siblings; (9) the mental and physical health of all parties; (10) each parent's willingness to facilitate the other's parenting time rights; (11) whether there is reason to believe either parent has acted in a manner resulting in a child being an abused or neglected child; (12) whether either parent has continuously and willfully denied the other parent's right to parenting time; (13) whether either parent has or is planning to establish a residence outside of Ohio; and (14) any other factor in the best interest of the child. R.C. 3109.051(D)(1)-(11), (13)-(14), (16). "'In order to further a child's best interests, the court has the discretion to limit or restrict visitation rights, including the power to restrict the time and place of visitation, to determine the conditions under which visitation will take place and to deny visitation rights altogether if visitation would not be in the best interests of the child.'" *Morrow v. Becker*, 2018-Ohio-3316, ¶ 25 (9th Dist.), quoting *Harrison v. Lewis*, 2017-Ohio-275, ¶ 40 (9th Dist.).

{¶11} Regarding a "trial court's findings with respect to the statutory best interest factors, '[t]his Court has held that what is in the best interest of a child is primarily a question of fact that should be reversed only if it is against the manifest weight of the evidence.'" *Smith v. Smith*, 2021-Ohio-3016, ¶ 7 (9th Dist.), quoting *Kokoski v. Kokoski*, 2013-Ohio-3567, ¶ 26 (9th Dist.). When

reviewing the manifest weight of the evidence in a civil case, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist. 2001). "Further, this Court must affirm individual factual conclusions of the trial court if they are supported by competent, credible evidence." *Smith* at ¶ 7, citing *Harrison* at ¶ 9.

{¶12} Here, the trial court concluded it was in the Child's best interest to modify Father's parenting time as follows:

> 4. Father's parenting time shall be by Zoom in a therapeutic counseling setting with the [C]hild's current counselor . . .. Father's parenting time shall be modified as recommended by [the counselor], moving toward in person visits with the counselor after May 1, 2024.
>
> 5. When the counselor finds that in person visits are appropriate, Father shall have in person visits every Saturday *or* Sunday for two (2) hours as agreed, or 1:00 to 3:00 p.m. if there is no agreement.

(Emphasis in original.) Relevant to this assignment of error, Father asserted in his supplemental briefing that the magistrate's decision "in regards to parenting time [was] against the manifest weight of the evidence[.]" Specifically, Father argued that the magistrate "found no evidence of physical fear by the child- only that she was anxious and intimidated[,]" and that these "findings simply do not add up to the extreme restrictions placed upon Father's parental rights." In ruling on Father's objections, the trial court initially rejected Father's argument on the basis that he did not include the argument in his original objections. However, the trial court then concluded that upon review of the evidence, the magistrate did not err.

{¶13} When ruling on a motion to modify visitation, a trial court must determine if the modification is in the child's best interest. *Braatz v. Braatz*, 85 Ohio St.3d 40, paragraph two of

the syllabus; R.C. 3109.051. However, on appeal, Father does not dispute or otherwise address any of the trial court's factual findings related to the statutory best interest factors. Instead, Father argues that the judgment is against the manifest weight of the evidence because "[t]he trial court's findings do not add up to the extreme restrictions placed upon [Father]'s parental rights." Father focuses his argument on the assertions that (1) the trial court "found no evidence of physical fear by the child- only that she was anxious and intimidated[,]" and (2) his claim that there was no explanation for why the Child suddenly refused to visit him. Father does not explain the relevance of these two assertions to the Child's best interest or why they should weigh against limiting Father's parenting time. There is no legal requirement for a trial court to find evidence that a child fears physical harm before restricting parenting time. *See* R.C. 3109.051(D); *Morrow*, 2018-Ohio-3316, at ¶ 25 (9th Dist.), quoting *Harrison*, 2017-Ohio-275, at ¶ 40 (9th Dist.). Moreover, there is ample evidence in the record showing that the Child's anxiety and her refusal to visit Father was due to Father's own behavior toward her.

{¶14} Upon review of the record, we conclude that this is not the exceptional case where the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *See Eastley*, 2012-Ohio-2179, at ¶ 20, quoting *Tewarson*, 141 Ohio App.3d at 115.

{¶15} Here, the trial court found that the Child unilaterally refused to visit her Father and that she was anxious and intimidated in his presence. We note that a transcript of the magistrate's in camera interview of the Child was not transmitted with record on appeal. "In the absence of such evidence, we presume regularity. However, we are also obligated to review the additional evidence in the record that is relevant to [the Child's wishes]." *In re M.W.*, 2008-Ohio-1049, ¶ 22 (9th Dist.).

{¶16} A review of the record shows the Child was fourteen years old and a freshman in high school at the time of the hearing. The GAL expressly testified that the Child is "petrified in the presence of her father[,]" and that she reported she did not wish to visit with Father. Mother also testified that the Child had refused to visit Father since April 2023. Mother stated that the Child first began reporting that she did not wish to visit Father when she was eight or nine years old. Mother explained the reason the Child did not wish to visit when she was younger as follows: "There was a lot of things [Father] would say negatively, that she didn't like, about her, as far as her hairstyles and a lot of demeaning words and stuff that wasn't just – that wasn't nice to her." Mother testified that Father's comments affected the Child's self-esteem. Mother testified that the Child expressed to Mother that she was very unhappy and having suicidal thoughts. The GAL also indicated that the Child's therapist had reported the Child had experienced suicidal thoughts.

{¶17} The GAL testified that he observed a visit between Father and the Child at Father's house, but that he ended the visit early because the Child was visibly uncomfortable. The GAL stated the child did not speak very much during the visit and Father spent the visit dictating to the Child about how the Child's refusal to visit made him feel, questioning what was happening in Mother's home, and stating that the Child should respect her father and her elders. The GAL spoke to the Child after the visit and the Child reported she felt she "was being traumatized again during a visit and she just didn't want to be there." In his report, the GAL stated that Father failed to show any insight into how his own behavior has contributed to the Child's negative feelings toward him.

{¶18} The GAL testified that although the Child did not want to visit with Father, she was willing to participate in virtual counseling with Father and her therapist. The GAL testified that the Child wanted to "see how [virtual counseling] goes prior to wanting to do face-to-face visits

with [Father]." The GAL stated he had spoken with the Child's counselor. The GAL indicated the Child's counselor "has significant history with this child[,]" and that the therapist reported it was not in the Child's best interest to have any visitation with Father before Father participated in a virtual visit with the therapist present.

{¶19} The GAL testified that he recommended (1) Father's parenting time should be supervised and occur every other Saturday or Sunday for a two-hour period, (2) Father and the Child should begin virtual counseling with the Child's therapist as soon as possible, and (3) when the Child feels more comfortable, Father and the Child should continue with weekly face-to-face therapy.

{¶20} Mother also testified that she believed "a lot of counseling needs to take place" between Father and the Child, and that she is willing to be supportive. Mother stated that she believed the Child was discussing her concerns around visiting Father with her therapist. Mother testified therapy has helped the Child and that the Child is happier, more confident, and "not as depressed and sad."

{¶21} Based on the record, we cannot say that the trial court abused its discretion when it overruled Father's objection asserting the magistrate's decision modifying Father's parenting time was against the manifest weight of the evidence. Father's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

**THE TRIAL COURT IS UNCLEAR AS TO VISITATION UPON THE EXPIRATION OF THE TIERED REUNIFICATION TIERS AND VAGUE AS TO THE PROGRESSION OF THE PARENTING TIME[.]**

{¶22} In his second assignment of error, Father asserts that the trial court abused its discretion when it adopted the magistrate's decision because the order allows the Child's therapist to determine when Father may begin in-person parenting time. We agree.

{¶23} "This Court generally reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion. In so doing, we consider the trial court's action with reference to the nature of the underlying matter." (Internal quotations and citations omitted.) *Herron*, 2021-Ohio-2223, at ¶ 8 (9th Dist.). "We review a decision regarding parenting time for an abuse of discretion." *Morrow*, 2018-Ohio-3316, at ¶ 22 (9th Dist.), quoting *In re K.M.L.*, 2018-Ohio-344, ¶ 6 (9th Dist.). An abuse of discretion indicates that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

{¶24} Here, the trial court adopted the magistrate's decision wherein the magistrate concluded it was in the Child's best interest to modify Father's parenting time as follows:

4. Father's parenting time shall be by Zoom in a therapeutic counseling setting with the [C]hild's current counselor . . .. Father's parenting time shall be modified as recommended by [the counselor], moving toward in person visits with the counselor after May 1, 2024.

5. When the counselor finds that in person visits are appropriate, Father shall have in person visits every Saturday *or* Sunday for two (2) hours as agreed, or 1:00 to 3:00 p.m. if there is no agreement.

6. The in person visits shall be supervised . . . for thirty (30) days, after which time visits shall not be supervised.

{¶25} Relevant to this assignment of error, Father objected to the magistrate's decision on the basis that that decision was "unclear as to visitation upon the expiration of the tiered reunification tiers and vague as to the progression of the parenting time[.]" Father also asserted the magistrate abused his discretion by permitting the Child's therapist to determine the timing and scope of Father's parenting time. In overruling Father's objection, the trial court determined the magistrate's decision was not vague because it included a specific date upon which in-person therapeutic counseling was permitted to begin. The trial court further determined that granting discretion to the Child's therapist to determine when in-person visits are appropriate did not render

the order vague. On appeal, Father reasserts the argument from his objection that "[t]he trial court abused its discretion in giving a third-party the discretion to determine the timing and scope of [Father]'s parenting time."

{¶26} "'In order to further a child's best interests, the court has the discretion to limit or restrict visitation rights, including the power to restrict the time and place of visitation, to determine the conditions under which visitation will take place and to deny visitation rights altogether if visitation would not be in the best interests of the child.'" *Morrow*, 2018-Ohio-3316, at ¶ 25 (9th Dist.), quoting *Harrison*, 2017-Ohio-275 at ¶ 40 (9th Dist.). However, this Court has previously held that a trial court errs when it leaves the expansion of a party's parenting time entirely in the hands of a reunification professional. *Morrow* at ¶ 27. It is the trial court's role "to determine the best interests of [a child] and fashion a parenting time order that reflects the same." *Id.* citing R.C. 3109.12(B); *see* R.C. 3109.04(B)(1). "While the trial court is free to seek recommendations from qualified professionals, it is not those professionals' role or duty to determine what is appropriate parenting time; that role and duty belongs to the trial court." *Morrow* at ¶ 27.

{¶27} Here, the trial court's order leaves the expansion of Father's parenting time entirely in the hands of the Child's individual counselor. While the trial court was free to seek recommendations from the child's counselor, it was the trial court's role to determine the best interest of the child and to fashion an appropriate parenting time order. *See id.* Therefore, we conclude that the trial court abused its discretion when it overruled Father's objection and adopted the magistrate's decision as it relates to the expansion of Father's parenting time.

{¶28} Father's second assignment of error is sustained.

III.

**{¶29}** Father's first assignment of error is overruled. Father's second assignment of error is sustained. The judgment of the Summit County Court of Common Pleas Domestic Relations Division is affirmed in part and reversed in part.

Judgment affirmed in part,
reversed in part,
and cause remanded.

―――――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

JILL FLAGG LANZINGER
FOR THE COURT

HENSAL, J.
SUTTON, J.
CONCUR.


APPEARANCES:

ROBERT C. ALDRIDGE, Attorney at Law, for Appellant.

REGINA M. SMITH, pro se, Appellee.